UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALBERT CRAIG AYRES and
ANN MARIE AYRES,

        Plaintiffs,

v.                                    Case No.  8:11-cv-816-T-24 TGW

USAA CASUALTY INSURANCE
COMPANY,

        Defendant.
_____/

**ORDER**

      This cause comes before the Court on Plaintiffs' Motion for Partial Summary Judgment. (Doc. No. 16).  Defendant opposes the motion.  (Doc. No. 19).  As explained below, the motion is granted in part and denied in part.

**I.  Standard of Review**

      Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

Plaintiffs contend that on or about December 30, 2009, they discovered damage to their home that they believed was caused by sinkhole activity.  Thereafter, they filed a sinkhole loss claim under the sinkhole loss endorsement to their homeowners' insurance policy, which was issued by Defendant.[1]  In response, Defendant retained HSA Engineers & Scientists ("HSA") to perform testing on the property to determine the cause of the damage.

On March 12, 2010, HSA issued a report, in which it concluded "that the distress noted in the home" was related to several issues, which included sinkhole activity.  (Doc. No. 16-1, p. 2).  HSA further stated "that sinkhole activity is a cause of the documented damage, within a reasonable professional probability."  (Doc. No. 16-1, p. 2).  However, HSA concluded that Plaintiffs' "home has not sustained 'structural damage', as defined in this report."  (Doc. No. 16-1, p. 15).  HSA defined "structural damage" as follows:

> [S]tructural damage means damage that has affected the ability of the structure to carry the loads for which it was designed or originally capable (or that may render it useless for its primary function), whereas cosmetic damage or distress does not affect the structural integrity of the building (or its primary function) and is considered primarily an appearance issue.  As such, structural damage would require repairs to reinforce and/or re-support the structure, whereas cosmetic damage can be patched and painted.

(Doc. No. 16-1, p. 45).

---

[1] Plaintiffs contend that the insurance policy at issue is attached to the complaint. However, the document attached to the complaint is not the entire insurance policy.  The *portions* of the insurance policy that are attached to the complaint cover the period from April 16, 2010 through April 16, 2011—the period *after* the alleged sinkhole loss was discovered. (Doc. No. 2-1).  Defendant's initial denial of Plaintiffs' claim was issued on April 8, 2010—prior to the start of the insurance policy that Plaintiffs refer to in the complaint and motion for summary judgment.  (Doc. No. 16-2).  The sinkhole loss endorsement is filed at Doc. No. 22-1.

On April 8, 2010, Defendant denied Plaintiffs' claim.  (Doc No. 16-2).  Specifically,

Defendant stated:

> Our investigation determined that your home has not sustained any structural
> damage as a result of the "sinkhole activity" on your property.  According to the
> HO-99FL Sinkhole Loss Coverage Endorsement to your policy . . . :
>
> > "**Sinkhole Loss** means structural damage to the building,
> > including the foundation, caused by **Sinkhole Activity**. . . ."
>
> The policy affords no coverage for the sinkhole activity unless the activity causes
> structural damage to the building including its foundation. [Your] homeowner
> policy also specifically excludes from coverage [several] . . . causes of loss which
> may have contributed to the cracks in your home . . . .

(Doc. No. 16-2, p. 1).  Plaintiffs point out that neither the insurance policy nor the sinkhole loss

endorsement defines the phrase, "structural damage."

Thereafter, the parties proceeded to Neutral Evaluation under the Florida Department of

Financial Services.  On November 12, 2010, the Neutral Evaluator "concluded that the damage

at the residence does <u>not</u> meet the definition of Structural Damage as defined" in its Neutral

Evaluation Report.  (Doc. No. 16-3, p. 4).  The Neutral Evaluator stated the following regarding

its definition of "structural damage":

> [W]e prefer to define "Structural Damage" objectively utilizing the building
> codes as the litmus test. We define Structural Damage as damage such that repair
> measures are necessary for a structure, in part or whole, to resist the structural
> loads mandated by the applicable building code.

(Doc. No. 16-3, p. 3).

Thereafter, Plaintiffs retained BillerReinhart Structural Group Inc. ("BRSG") to perform

an inspection of the property and evaluate the damage to the structure.  On December 9, 2010,

BRSG issued its report, in which it concluded "that structural damage (impaired function of the

foundation and exterior wall cracks), defined as an altered condition/impairment that lessens a

3

structure's ability to resist/support applied loads, exists at [Plaintiffs'] Residence."  (Doc. No. 16-4, p. 6).

Defendant asked HSA to review BRSG's report to determine if BRSG's findings changed HSA's conclusions.  On March 10, 2011, HSA issued a supplemental report, in which it rejected BRSG's definition of structural damage, which BRSG defined as "an altered condition/impairment that lessens a structure's ability to resist/support applied loads." Additionally, HSA stated the following:

> [BRSG's] definition is not consistent with the engineering definition of structural damage that was used by HSA in performing our studies.  Interpreted literally, [BRSG's] definition would include all damage of any nature and severity in a structure, since the degree to which the capacity of the structure would need to be damaged is not specified . . . .  Barely noticeable hairline cracks in masonry walls would qualify as structural damage according to the above definition.

(Doc. No. 19-3, p. 3).  Thereafter, Defendant reaffirmed its denial of Plaintiffs' claim.

On March 14, 2011, Plaintiffs filed the instant lawsuit in state court, which was removed to this Court.  In their complaint, Plaintiffs assert a single claim for breach of the insurance policy due to Defendant's denial of their sinkhole loss claim.  (Doc. No. 2).  In response, Defendant filed an answer, as well as twenty-two affirmative defenses, several of which challenge whether the damage to Plaintiffs' property was caused by an excluded peril as opposed to sinkhole activity.  (Doc. No. 3).

**III.  Motion for Partial Summary Judgment**

Currently pending before the Court is Plaintiffs' Motion for Partial Summary Judgment. In this motion, Plaintiffs ask the Court to define the phrase, "structural damage," which is not defined in the insurance policy or the sinkhole loss endorsement.  Specifically, they request that the Court define "structural damage" as "damage to the structure."  Additionally, they request

that the Court find, as a matter of law, that their property damage is covered under the policy.

Accordingly, the Court will address each argument.

### A.  Definition of Structural Damage

Plaintiffs argue that because "structural damage" is not defined within the insurance

policy or within the sinkhole loss endorsement, the Court should define the phrase as "damage to

the structure."  In support of this position, Plaintiffs cite several Florida state circuit court cases

that have found that when "structural damage" was not defined within the insurance policy, the

phrase must be given its plain and ordinary meaning of "damage to the structure."  See Austin v.

USAA, 08-10190 (Fla. 13th Jud. Cir. Aug. 16, 2010); Cioffi v. USAA Cas. Ins. Co., H-27-CA-

2010-1427 (Fla. 5th Jud. Cir. May 17, 2011); Bissell v. United Services Automobile Assoc., 51-

2010-CA-008524 (Fla. 6th Jud. Cir. April 20, 2011); De La Fuente v. Homewise Preferred Ins.

Co., 10-022488 (Fla. 13th Jud. Cir. May 23, 2011); Ramirez v. Homewise Preferred Ins. Co., 10-

013685 (Fla. 13th Jud. Cir. Feb. 18, 2011); Jackson v. USAA Cas. Ins. Co., 10-13586 (Fla. 13th

Jud. Cir. June 5, 2011).[2]

Defendant argues that this Court should not provide the meaning of "structural damage"

unless the phrase is found to be ambiguous.  Thus, argues Defendant, because Plaintiffs are not

arguing that the phrase is ambiguous, the Court should not provide a definition.

The basis for Defendant's opposition is unclear to this Court.  If, as Defendant suggests,

the phrase, "structural damage," is clear and unambiguous, then Defendant should not have a

problem with this Court recognizing the plain and ordinary meaning of the phrase, as was

recognized by other Florida courts.  If Defendant does not agree that the plain and ordinary

---

[2]These cases are attached at Doc. No. 16-5, 16-6, and 16-7.

meaning of the phrase is "damage to the structure," then Defendant is implicitly arguing that the phrase is ambiguous, because Plaintiffs' definition is a reasonable one.[3]  If the phrase is ambiguous, then the Court must resolve the ambiguity in favor of Plaintiffs.  See Travelers Indemnity Co. v. PCR Inc., 889 So. 2d 779, 786-87 (Fla. 2004).  This conclusion is consistent with the Florida Supreme Court's directive regarding interpreting insurance policies:

> If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written.  Policy language is considered to be ambiguous, however, if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.  When language in an insurance policy is ambiguous, a court will resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage as opposed to the reasonable interpretation that would limit coverage.

Id. (internal quotation marks and citations omitted).

Thus, this Court concludes, as a matter of law, that the undefined phrase, "structural damage," within the sinkhole loss endorsement means "damage to the structure."  Accordingly, Plaintiffs are granted summary judgment on this issue.

### B.  Coverage for the Property Damage

Next, Plaintiffs argue that the Court should find, as a matter of law, that their property damage is covered under the policy.  Defendant argues that genuine issues of material fact exist that preclude summary judgment.  Specifically, Defendant points out that it disputes that the

---

[3]The Court notes that in 2011, the Florida Senate recognized there was not a uniform meaning for the phrase, "structural damage," with respect to insurance claims from sinkhole activity, as the phrase had been defined in two different ways: (1) as damage to the structure, or (2) as damage that affects the load bearing capacity of the structure.  See Bay Farms Corp. v. Great Am. Alliance Ins. Co., 2011 WL 6099367, at *4 (M.D. Fla. Dec. 7, 2011)(quoting FL Staff An., S.B. 408, 4/7/2011).

6

damage to the property was, in fact, caused by sinkhole activity as opposed to being caused by an excluded peril under the insurance policy.  In support of this argument, Defendant points to HSA's March 12, 2010 report, in which it identified several causes for the "distress" it observed in Plaintiffs' home.  (Doc. No. 16-1, p. 2).  Thus, argues Defendant, the issues of whether there was structural damage to Plaintiffs' home (which this Court defines as damage to the structure of Plaintiffs' home) and whether that damage was, in fact, caused by sinkhole activity, remain questions for the jury.  The Court agrees with Defendant and denies summary judgment on the issue of coverage.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 16) is **GRANTED IN PART AND DENIED IN PART:** The motion is **GRANTED** to the extent that the Court finds that the term "structural damage" in the insurance policy has its plain and ordinary meaning of "damage to the structure;" otherwise, the motion is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of April, 2012.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record